BEAM, Circuit Judge.
Three government officials who were sued in their individual capacities under 42 U.S.C. § 1983, appeal the district court’s denial of their claim of qualified immunity.
Because we find that the suit fails to allege that the officials violated a clearly established constitutional right, we reverse.
I. BACKGROUND
Because this appeal is before us on a motion for summary judgment, we view the facts in the light most favorable to the non-moving party. See Kraft v. Ingersoll-Rand Co., 136 F.3d 584, 586 (8th Cir.1998). In December of 1992, Jo-Anne Coleman was hired by the Minneapolis Public School District as principal of Lincoln Elementary School (Lincoln). After she had worked there for about five months, the school district received an anonymous telephone call alleging that Coleman had a prior felony record and had served time in prison. *753 School officials investigated and discovered that Coleman had been convicted of several counts of Medicaid fraud and had served eighteen months in prison. School officials also examined Coleman’s employment application which asked, “Have you ever been convicted of a misdemeanor or felony?” Coleman wrote “N/A.”
On June 7, 1993, Daniel Loewenson, the school district’s human resources director, telephoned Coleman and asked her to attend a meeting the next day with Katrina Reed, one of the school district’s associate superintendents. Loewenson did not tell Coleman the purpose of the meeting, but did tell her that she could bring a union representative. Coleman attended the meeting accompanied by an attorney. Reed confronted Coleman with the conviction and Coleman’s failure to reveal it on the application. Coleman acknowledged both. Reed then offered Coleman the opportunity to resign. Coleman refused and requested a formal hearing. Reed responded that Coleman was not entitled to any additional hearing, and informed her that if she did not resign, she would be terminated at that evening’s meeting of the Minneapolis Public School Board of Education (Board).
That evening, Reed presented evidence of Coleman’s conviction and employment application to the Board at an executive session, which was closed to the public. Following the executive session, the Board held its regular public meeting. Both Coleman and her attorney attended this meeting, but, although several members of the public voiced support for Coleman, neither Coleman nor her counsel sought to address the Board. The Board voted to discharge Coleman effective July 12, 1993. Coleman appealed her discharge to the Minnesota Court of Appeals. The court denied the petition, and the Minnesota Supreme Court summarily denied her petition for further review.
After Coleman’s discharge, the Lincoln Elementary School community was in an uproar. A flier circulated speculating about the “true reason” for Coleman’s discharge. In response to this confusion, the school district distributed a statement to all Lincoln elementary students informing them that, “Jo Coleman was convicted of a felony prior to being employed by the district and served time at the Shakopee Women’s Reformatory.” In a letter accompanying the statement, Betty Webb, another associate superintendent for the district, explained that the statement was “issued by the Minneapolis Public Schools with the knowledge and approval of the Human Resources Department and my office.”
Coleman sued Webb, Reed and Loewenson (collectively, “the administrators”) in both their official and individual capacities under 42 U.S.C. § 1983. She alleged that the administrators deprived her of property and liberty interests without due process of law.[2] The administrators moved for summary judgment based on qualified immunity. The district court denied the motion and the administrators appeal.
II. DISCUSSION
The administrators assert that they are entitled to qualified immunity as a matter of law. In assessing that claim, we first consider whether Coleman has alleged the violation of a constitutional right. See County of Sacramento v. Lewis, — U.S. -, 118 S.Ct. 1708, 1714 n. 5, 140 L.Ed.2d 1043, (1998); Siegert v. Gilley, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). Coleman asserts that the administrators failed to provide her with procedural due process, claiming that her discharge deprived her of a property interest in continued employment with the school district and that dissemination of the statement approved by Webb deprived her of a liberty interest in her good name and reputation.[3]
*754 A. Property Interest Claim
Coleman argues that her employment contract entitled her to be discharged only for cause. The administrators respond that Coleman was a probationary employee, terminable at will. This is a question of state law which we will leave to the Minnesota state courts. See Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). We will assume that Coleman had a property interest in her job. However, even assuming the deprivation of a protected interest, we find that Coleman has not alleged a constitutional violation because she was provided adequate pre-termination process.
In Cleveland Board of Education v. Loudermill, the Supreme Court held that a “hearing” was necessary prior to the termination of a tenured public employee. 470 U.S. 532, 545, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). This hearing is intended to serve as “an initial check against mistaken decisions — essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.” Id. at 545-46, 105 S.Ct. 1487. Rather than prescribe a set format for pre-termination hearings, the Court emphasized that “[t]he essential requirements of due process ... are notice and an opportunity to respond,” and that “[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer’s evidence, and an opportunity to present his side of the story.” Id. at 546, 105 S.Ct. 1487.
The pre-termination procedure afforded Coleman by the administrators satisfied the requirements established in Louder-mill. See Powell v. Mikulecky, 891 F.2d 1454, 1459 (10th Cir.1989) (finding that confrontation in which employee was asked and answered two questions was sufficient pre-termination hearing under Loudermill). Coleman received oral notice of the charge against her when Reed confronted her face-to-face in the June 8 meeting. See, e.g., Riggins v. Board of Regents, 790 F.2d 707, 711 (8th Cir.1986) (holding that employee did not have to be notified of charges prior to meeting). She was represented by an attorney at that meeting. Coleman had an opportunity to rebut the charge, but chose instead to admit to it. Contrary to Coleman’s assertion, Loudermill does not imply that there must be a delay between the “notice” and the “opportunity to respond” accorded to a public employee. See, e.g., Demming v. Housing and Redevelopment Auth., 66 F.3d 950, 953 (8th Cir.1995) (rejecting plaintiffs claim that she was “ambushed” by charges and needed time to prepare an adequate response). Finally, Coleman has not identified “any information she would have used in rebuttal had she had more notice.” Riggins, 790 F.2d at 711.
In addition to her meeting with Reed, Coleman had a second opportunity to respond to the charge against her. The evening session of the Board occurred after Coleman became aware of the charge.[4] However, Coleman did not utilize this second opportunity to “present [her] side of the story.” Loudermill, 470 U.S. at 546, 105 S.Ct. 1487. Although she had counsel present to speak for her, and even after the Board heard from several members of the public regarding her proposed termination, Coleman remained silent. The administrators cannot be faulted for Coleman’s failure to take advantage of this additional opportunity to be heard. See Riggins, 790 F.2d at 711.
Accordingly, Coleman has not alleged a violation of her constitutional right to procedural due process and the administrators are entitled to summary judgment on her property interest claim.
B. Liberty Interest Claim
Coleman asserts that the administrators deprived her of a liberty interest without due process. A liberty interest may be implicated when a governmental employer makes statements that may seriously damage the employee’s good name. Roth, 408 U.S. *755 at 573, 92 S.Ct. 2701. A deprivation of constitutional magnitude may occur if such an employee is not granted the opportunity to clear’ his or her name. Id. Therefore, in order to state a claim under section 1983 for denial of due process based on the loss of a protected liberty interest, Coleman must establish three things. First, she must show that the reason for her discharge stigmatized her. See Shands v. City of Kennett, 993 F.2d 1337, 1347 (8th Cir.1993). Second, she must show that the administrators made those reasons public. See Merritt v. Reed, 120 F.3d 124, 126 (8th Cir.1997). The district court found that Coleman had met these two elements of her liberty interest claim, and we are inclined to agree.[5] Finally, Coleman must establish that she denied the charges for which she was terminated. See Codd v. Velger, 429 U.S. 624, 627, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977) (per curiam). Coleman has not satisfied this third requirement.
The district court, citing Pollock v. Baxter Manor Nursing Home, held that the truth of these charges was irrelevant to Coleman’s liberty interest claim. 716 F.2d 545, 546-47 (8th Cir.1983) (per curiam). In Pollock, the majority held that an employee is not required to prove that the stigmatizing charges are false in order to be entitled to a name-clearing hearing. Id. However, this court has always required a plaintiff to at least deny the substantial truth of the charges. See Hogue v. Clinton, 791 F.2d 1318, 1322 n. 4 (8th Cir.1986); Seal v. Pryor, 670 F.2d 96, 99 (8th Cir.1982). In Pollock, the discharged employee also contested the accuracy of the allegations. Pollock v. Baxter Manor Nursing Home, 706 F.2d 236, 237 (McMillian, dissenting), rev’d on reh’g, 716 F.2d 545 (8th Cir.1983). There is no purpose in holding a name-clearing hearing if the charges are un-controverted. In Codd, the Court explained that an employee’s failure to assert that an allegation “was substantially false ... is fatal to [his] claim under the Due Process Clause that he should have been given a hearing.” 429 U.S. at 627, 97 S.Ct. 882.
In this case, Coleman has never denied that she has a felony record, that she served time in prison, and that she failed to apprise the school district of these facts. These are the only charges published in the statement approved by Webb. Therefore, Coleman was not entitled to a name-clearing hearing.
Even if Coleman were entitled to a name-clearing hearing, procedural due process was satisfied because she received not one, but two. The due process requirements pronounced in Loudermill apply equally to liberty and property interests. See Schleck v. Ramsey County, 939 F.2d 638, 642-43 n. 5 (8th Cir.1991). Coleman had a chance to explain the allegations in her meeting with Reed and before the Board. This is more than the administrators were constitutionally required to provide.
Coleman has failed to allege the deprivation of a constitutional right. The administrators are therefore entitled to summary judgment on her liberty interest claim.
III. CONCLUSION
For the foregoing reasons, the decision of the district court is reversed. The administrators are entitled to summary judgment on the claims discussed above. The case is remanded for proceedings consistent with this opinion.

. Coleman also alleged breach of contract and intentional infliction of emotional distress. Those claims are not before us on appeal.

. As an initial matter, the administrators argue that they are not proper defendants in the property interest claim because the Board, not they, actually terminated Coleman. Loewenson and Reed also argue that they were not involved in the liberty interest claim. Our holding makes it unnecessary to reach these arguments.

. We note that Coleman’s case differs from Winegar v. Des Moines Independent Community School District, because unlike Winegar, Coleman had the opportunity to address the administrators who made the termination recommendation, and the Board members who made the discharge decision. 20 F.3d 895, 901 (8th Cir.1994).

. We do find it odd, however, that Coleman has maintained that her criminal record was public knowledge and was generally known within the community of educators, while simultaneously claiming that publication of this information impaired her employment opportunities in education.