HARTFORD INSURANCE COMPANY of the Midwest *v.*
Damon BREWER and Carolyn Brewer

CA 95-237                                        922 S.W.2d 360

Court of Appeals of Arkansas
En Banc
Opinion delivered May 29, 1996

*Anderson & Kilpatrick,* by: *Michael E. Aud,* for appellant.

*Helen Rice Grinder,* for appellee.

JOHN MAUZY PITTMAN, Judge. The appellant, Hartford Insurance Company, appeals from an order granting summary judgment in favor of appellees, Damon and Carolyn Brewer, on their claim to entitlement to the proceeds of an insurance policy issued by appellant. Appellant contends that the trial court erred in granting appellees' motion for summary judgment and instead should have awarded summary judgment to appellant. For the reasons that follow, we affirm.

Although the record in this case is sketchy at best, the parties seem to agree upon certain facts. In December 1990, appellee Damon Brewer's mother, Ethel Brewer, died intestate, leaving a residence in Conway to vest in her heirs by operation of law. *See* Ark. Code Ann. § 28-9-203(c) (1987). In July 1991, appellant issued a homeowner's insurance policy covering the property through June 1992. Apparently, the named insured was the "Estate of Ethel Brewer." On February 3, 1992, the other heirs of the decedent transferred all their interest in the property to appellees, who are husband and wife. Twelve days later, the property burned. Appellees then sought to collect under the policy issued by appellant. The claim was denied, and appellees filed this action, in their individual capacities only, in circuit court. After initial pleadings were filed, both appellant and appellees filed motions for summary judgment. The court granted appellees' motion and awarded them judgment for $38,500.00 under the policy, attorney's fees, and a twelve-percent penalty.

On appeal, appellant argues that the trial court erred because the named insured, the "Estate of Ethel Brewer," had no insurable interest at the time of the loss as required by Ark. Code Ann. § 23-79-104 (Repl. 1992). While appellant seems to concede that the estate had an insurable interest at the time that the policy was issued and that the appellees had an insurable interest at the time of the loss, appellant specifically argues that an estate is a legal entity separate and distinct from a decedent's individual heirs and that "it is not enough to have an insurable interest in property unless the person or persons having such interest also are specifically named as insureds." In other words, it is appellant's argument that appellees had no contract of insurance with appellant, and that appellant was

entitled to judgment as a matter of law. Appellees respond that, "[s]ince the heirs of Ethel Brewer already had whatever interest they were to obtain from her estate when the estate became the named beneficiary, it is clear that the policy must be read to cover the heirs of the estate and, by conveyance, to [cover] Damon and Carolyn Brewer."

Summary judgment is an extreme remedy and should be granted only when there are no genuine issues of material fact left to be determined and when the case can be decided as a matter of law. *Cherepski* v. *Walker,* 323 Ark. 43, 913 S.W.2d 761 (1996). In light of the record with which we have been presented, however, we are unable to reach the merits of appellant's argument. Although we are essentially being asked to construe a written contract of insurance so as to reverse a circuit court's solemn judgment thereon, the contract appears neither in the abstract nor even in the record.[1] It is axiomatic that, to determine rights and duties under a contract, we must determine the intent of the parties. This is not to be accomplished through the establishment of a judicial inquisition, but instead by examining the written agreement to construe it and declare its legal effect. *Duvall* v. *Massachusetts Indemnity and Life Insurance Co.*, 295 Ark. 412, 748 S.W.2d 650 (1988); *Floyd* v. *Otter Creek Homeowners Association*, 23 Ark. App. 31, 742 S.W.2d 120 (1988). It is well settled that the intent of the parties is to be determined from the whole context of the agreement; the court must consider the instrument in its entirety. *Continental Casualty Co.* v. *Davidson*, 250 Ark. 35, 463 S.W.2d 652 (1971); *Fowler* v. *Unionaid Life Insurance Co.*, 180 Ark. 140, 20 S.W.2d 611 (1929); *Floyd* v. *Otter Creek Homeowners Association, supra.* Clearly, it is an appellant's burden to bring up a record sufficient to demonstrate error. *McAdams* v. *Automotive Rentals, Inc.*, 324 Ark. 332, 924 S.W.2d 464 (op. del. May 6, 1996); *May Construction Co., Inc.* v. *Benton School District No. 8*, 320 Ark. 147, 895 S.W.2d 521 (1995); *Young* v. *Young*, 316 Ark. 456, 872 S.W.2d 856 (1994). Without the contract in question, which may have spoken in any number of ways to the issue of the person or persons entitled to the policy proceeds, we cannot determine whether the trial court erred. Therefore, we conclude

---

[1] The dissent's characterization of this defect as nothing more than an "abstracting error" is specious.

that appellant has failed in its burden, and we affirm.[2]

Affirmed.

ROGERS, J., agrees.

JENNINGS, C.J., concurs.

MAYFIELD, NEAL, and GRIFFEN, JJ., dissent.

WENDELL L. GRIFFEN, Judge, dissenting.

*"A blind man should not judge of colors."* Proverb

The majority would affirm this patently wrong result due to an abstracting error. The Arkansas Supreme Court has repeatedly held that even an abstract that falls considerably short of the requirements of Rule 4-2 may not be "flagrantly" deficient. *Linder* v. *Howard,* 296 Ark. 414, 757 S.W.2d 549 (1988); Ark. Sup. Ct. R. 4-2(b)(2); see also *Haynes* v. *State,* 309 Ark. 583, 832 S.W.2d 479 (1992); *Goodloe* v. *Goodloe,* 253 Ark. 550, 487 S.W.2d 593 (1972). The balance of the parties' briefs may overcome the deficiency and provide the court with the matters "necessary to an understanding of all questions presented to the court for decision." Ark. Sup. Ct. R. 4-2(a)(6); *Fight* v. *State,* 314 Ark. 438, 863 S.W.2d 800 (1993); *Haynes* v. *State,* 309 Ark. 583, 832 S.W.2d 479 (1992).

Here, the homeowner's insurance policy at issue was not included in the record or abstracted. However, the issue on appeal has nothing to do with the existence or the basic terms of the contract. Indeed, the parties agree to all the material issues surrounding the contract. The narrow question on appeal is whether the named insured ("The Estate of Ethel Brewer") continued to have an insurable interest or, more specifically, whether summary judgment on this question was proper given the factual state of the record. I contend that the absence of the contract in the record was not fatal, given the parties' apparent stipulations regarding the contract, and that we should have properly proceeded to the issue of summary judgment.

---

[2] The dissenting judges assert that necessary facts and parties are absent, and advocate remand for further factual development and joinder of the estate as a party. This displays a fundamental misapprehension of the scope of our review and the role of appellate courts in general. Essentially, the dissent would have us *sua sponte* order joinder of a "party" that may not exist in order to determine the answer to a question that the actual parties have not asked.

With regard to summary judgment, I disagree with the result reached in this case and the reasoning announced in the prevailing opinion because it is clear that genuine issues of material fact exist that preclude entry of summary judgment. It is equally clear that no accurate determination can be made that either party is entitled to judgment, as a matter of law or otherwise, until those factual issues are resolved. Therefore, the trial court should not have entered summary judgment in favor of appellees in the face of the clear and time-honored principle affirmed by Rule 56 of the Arkansas Rules of Civil Procedure. The same logic compelled denial of the appellant's summary-judgment motion.

We must remember that the object of summary judgment proceedings is not to try the issues, but to determine if there are any issues to be tried, and if there is any doubt whatsoever, the motion for summary judgment should be denied. *Rowland* v. *Gastroenterology Assocs.*, 280 Ark. 278, 657 S.W.2d 536 (1983); *Walker* v. *Stephens*, 3 Ark. App. 205, 626 S.W.2d 200 (1981). That is why courts have consistently stated that summary judgment is an extreme remedy which should only be allowed when it is clear that there is no issue of fact to be litigated. *Lee* v. *John Doe*, 274 Ark. 467, 626 S.W.2d 353 (1981); *McCaleb* v. *National Bank of Commerce*, 25 Ark. App. 53, 752 S.W.2d 54 (1988). This case demonstrates what can happen when parties and courts forget or ignore this fundamental rationale.

The parties agree that appellant issued its policy covering the residence in question to an insured known as the "Estate of Ethel Brewer." Appellant claims that its insured lost any insurable interest in the property once the heirs at law sold their respective interests to Damon Brewer and his wife. Neither party before us is the Estate of Ethel Brewer. The record contains nothing that suggests the status of the Estate of Ethel Brewer. Neither the trial judge nor this court knows the status of the Estate of Ethel Brewer. Especially important is whether the Estate of Ethel Brewer has claims pending against it that might be satisfied by the proceeds of the insurance policy. Whether the Estate is open or closed, whether claims are pending against it and, if so, in what amounts, whether the Estate has somehow transferred any interest that it may have in the policy proceeds to appellees, and whether Damon Brewer is entitled to recover, personally, from appellant based upon an insurance policy issued to somebody else known as the Estate of Ethel Brewer, are

questions that should be resolved before a court of law orders appellant to give insurance proceeds payable on a policy in the name of the Estate to anybody else. But instead of joining the Estate in this litigation and developing the evidence on these issues, the parties have presented this case for summary adjudication with nothing in the record concerning any of them. The trial court improperly gave the imprimatur of legitimacy to their efforts by granting appellees' summary-judgment motion, and now the result announced in the prevailing opinion compounds the error.

None of the aforementioned basic questions were raised by either party at the trial level or on this appeal. Of course, appellant has an interest in paying nothing to anybody, so it can hardly be expected to raise the possibly legitimate interest of the named insured to defeat its position. Appellees appear interested in recovering the policy proceeds in their personal capacities; otherwise Damon Brewer would have made certain that the Estate of Ethel Brewer was joined in the lawsuit. As matters now stand, the record does not contain any fact showing what right the Estate has to the policy proceeds, whether it has an insurable interest that justifies a finding that supports recovery, or whether it has an insurable interest but is otherwise precluded from recovery. One thing is certain, the parties to this appeal have done everything but join the insured, the only party in the world whose interest is questioned in the appeal.

I would reverse and remand this case to the trial court for further proceedings, beginning with joinder of the Estate of Ethel Brewer. If the Estate is not a necessary party to this lawsuit to determine who gets the proceeds of its insurance policy, if any proceeds are payable, then appellees have plainly failed to demonstrate how the Estate became disqualified. At minimum, the status of the Estate of Ethel Brewer is a matter to be proved in order to determine whether the Estate has an insurable interest represented by the proceeds of the insurance policy that appellant issued to it and for which premiums were paid. After all, the question raised by appellant's summary-judgment motion was whether the Estate (rather than appellees) had an insurable interest at the time of the loss. If there were any questions of fact to be tried on that point, summary-judgment was inappropriate.

Appellees do not resolve the issue of the Estate's insurable interest by their argument that they purchased the interests of the

other heirs at law. The law in Arkansas and elsewhere is that an insurable interest may continue even after a transfer of ownership. *Hartford Fire Ins. Co.* v. *Stanley*, 7 Ark. App. 94, 644 S.W.2d 628 (1983); Appleman, *Insurance Law and Practice*, § 2181 (citing cases where a vendor retains an insurable interest if he has indebtedness, some other lien, or a reversion interest in the property or if the contract for sale is forfeitable, or if the vendor remains in possession, or where the deed has been placed in escrow.) Arkansas is in accord with the general rule that coverage under a fire-insurance policy is personal to the insured and for its benefit only. *Echo, Inc.* v. *Stafford*, 21 Ark. App. 201, 730 S.W.2d 913 (1987). Insurance contracts do not run with the property. *Fireman's Fund Ins. Co.* v. *Rogers*, 18 Ark. App. 142, 712 S.W.2d 311 (1986). Consequently, when the insured parts with its interest in the property, the insurance policy is no longer in effect. *Appleman, supra*, § 2241; 44 C.J.S. §§ 229, 233. This explains why one must determine whether the Estate retained any cognizable interest in the property after appellees acquired the interests of the other heirs at law. If it did not, appellees are entitled to nothing.

Neither the record in this case nor the abstract presented on this appeal indicates the status of the Estate. It is certainly conceivable that the Estate may retain some inchoate or reversionary interest in the property that was insured pending its closure despite the actions by the heirs at law to transfer their respective interests to appellees. If the Estate indeed has an insurable interest, then nothing explains why appellees are entitled to be paid the full amount of the policy proceeds. After all, when the fire occurred the policy was, without question, yet effective with the Estate as the named insured. Thus, the policy proceeds would reasonably inure to the Estate until there were no outstanding claims or legal challenges pending, and then to the heirs at law pro rata. Given that the heirs at law had transferred their interests to appellees, this would mean that appellees would recover after the factual issues inherent in the case had been resolved, rather than reap a recovery without regard to the Estate's status and conceivable interest.

Unless one embraces the inaccurate notion that the heirs at law can properly and effectively contract among themselves to dispose of property within an estate that may be subject to the claims of creditors without leave of a probate court, there is no reason to accept the appellees' position that they are, for purposes of this

litigation, the same as the Estate of Ethel Brewer. The record certainly does not contain anything that supports that conclusion. "Estate" and "heirs" are not equivalent terms. *Black's Law Dictionary* 548 (6th ed. 1990) (citing *Martin v. Hale*, 167 Tenn. 438, 71 S.W.2d 211 (1934). There is nothing in the record showing that the Estate released any interest that it had in the insured property to appellees. The record does not include any order from the probate court demonstrating that appellees have been authorized to pursue a claim to recover these insurance proceeds in their personal capacities. Even if appellees made premium payments, it is obvious that the insurance was obtained for the benefit of the Estate. This would mean that appellees would be entitled to recover the amount paid for the premiums from the Estate. It does not mean that appellees would divest the Estate of any interest that it otherwise held in the property that was insured.

Ordinarily, where a contract exists between A and B, before C can recover money allegedly due under the contract, C must prove how she has succeeded to rights belonging to A or B. One would think that where neither A nor B stipulates that C has the right to recover, a trial would be necessary to settle the question. Yet today, we decide that C (appellees) was entitled to judgment without trial — even in the face of argument from A (appellant) that B (The Estate of Ethel Brewer) had no insurable interest whatsoever and without concern for whatever rights B might have. If this case had proceeded to trial and produced no proof about the Estate's interest in the insurance policy after the fire loss, appellant would have been entitled to a directed verdict in its favor. It is mind-boggling how appellant can now be held to the bizarre result of summary judgment in appellees' favor when it would have deserved the opposite result on a motion for directed verdict at trial.

In sum, whether a party has an insurable interest in property is ordinarily a question of fact. *Colorado Farm Bureau Mut. Ins. Co.* v. *CAT Continental, Inc.*, 649 F. Supp. 49 (D. Colo. 1986). The trial court granted summary judgment for appellees, denied the summary judgment motion filed by appellant, and announced in its amended order of February 13, 1995, that "the Court doth find that the Plaintiff's (sic) had, at the time of the loss of the dwelling located at 1923 Simms Street, Conway, Arkansas, an insurable interest . . . ." However, there are no facts in the record showing how appellees (plaintiffs below) acquired the insurable interest held

by the Estate of Ethel Brewer, or even that they did acquire it. As the proverb quoted at the beginning of this opinion suggests, one must first see before judging. In this case the trial court and this court are blind concerning crucial, fact-intensive issues on which the parties appear strangely eager to avoid developing proof so that a court can render an informed judgment. Therefore, it was error to grant summary judgment on the motion of either party.

MAYFIELD and NEAL, JJ., join in this dissent.