2010 Ark. App. 707

**Johnny WEAVER, James F. Valley, City of Helena–West Helena et al., Appellants**

v.

**Roosevelt COLLINS, Appellee.**

No. CA 09–846.

Court of Appeals of Arkansas.

Oct. 27, 2010.

André K. Valley, City Atty., Helena–West Helena, for appellant.

Jimmie Lee Wilson, West Helena, for appellee.

ROBERT J. GLADWIN, Judge.

Appellants Johnny Weaver, James F. Valley, and the City of Helena–West Helena (referred to hereafter collectively as the City) appeal the April 21, 2009 order of the Phillips County Circuit Court that enforced a settlement agreement between appellee Roosevelt Collins and the City and granted Collins judgment in the amount of $33,000. The City claims on appeal that (1) the trial court erred in finding that Collins proved he was entitled to either a writ of mandamus or declaratory judgment against the City; (2) the trial court erred in allowing Collins to introduce evidence of a settlement negotiation; and (3) the trial court erred in finding that the City executed a settlement contract with Collins. We find no error and affirm.

## I. *Statement of Facts*

Collins filed a complaint against the City invoking jurisdiction based upon Arkansas Code Annotated sections 16–115–101 to –109 (Repl.2006) and Arkansas Rule of Civil Procedure 78(d) (2005), which provide for writs of mandamus, and Arkansas Code Annotated sections 16–111–101 to –111 (Repl.2006) and Arkansas Rule of Civil Procedure 57 (2005), which provide for declaratory judgments. In his complaint, Collins claimed that he worked for the City of West Helena for more than twenty years and was employed as head of the street department for the last seven. When the West Helena City Council approved a budget for fiscal year 2005, Collins claimed that he was constructively fired from his position. Citing Arkansas Code Annotated section 14–14–110 (Repl.

1998),[1] Collins argued that then-mayor Johnny Weaver had the exclusive power to appoint him to the head of the street department, and the city council did not have the authority to remove him. Therefore, Collins sought a writ of mandamus requiring the mayor to reinstate him to his former position and to order the city council not to interfere with his reinstatement. Collins further sought "back pay for any time lost from his legitimate position."

At the bench trial held on December 19, 2008, Weaver testified that he did not fire Collins, but that the city council eliminated Collins as head of the department in the budget process. He testified that Collins received some back pay.

An order filed June 22, 2005, from a previous case involving the City was introduced.[2] By this order, the Phillips County Circuit Court found that, to be valid, the city budget must be passed by ordinance; the 2005 budget for the City was not passed by ordinance; and the City must continue to operate in accordance with the 2004 budget until an ordinance was passed. The trial court found in paragraph 12 of its order as follows:

The parties have stipulated that City employee, Roosevelt Collins, is the Street and Sanitation Department Head. The city council has cut his salary in all attempted budgets for 2005. Because Mr. Collins is the Street and Sanitation Director and held that position in 2004, until such time that the City council passes a budget by Ordinance, he shall be compensated in accordance with the 2004 [sic]. This Order does not create an absolute entitlement in Mr. Collins to his salary. It is intended to cure the issue of his past due payments. The Court has not been presented with a contract between Mr. Collins and the City and the parties have not addressed any issue relating to Mr. Collins other than the fact that he was owed back pay in accordance with the 2004 Budget.

Former alderman Calvin Holden testified that he was a city-council member in West Helena in 2005, and that during the political fight the council was having with the mayor, the council voted to hire a new head of the street department. He said the council voted to hire Bobby Jones to replace Collins and to increase Jones's salary from the $21,000 Collins was receiving to $35,000. He said that when the city attorney explained to them that they had "made a violation" in terminating Collins

---

1. Collins's complaint alleges that Arkansas Code Annotated section 14–14–110 authorizes and requires the mayor exclusively to exercise the power to appoint department heads. However, that section generally provides that all records of a local government be made available for inspection and copying. Collins filed an amended complaint citing Arkansas Code Annotated section 14–42–110 (Repl. 1998), which does provide for the removal and appointment powers of mayors and city managers. He further cited Arkansas Code Annotated section 14–43–504 (Repl.1998), which outlines the powers and duties of mayors, and section 14–58–303 (Repl.1998), which provides for a municipality's contracts and purchases.

2. This order was the result of several lawsuits that were filed in Phillips County Circuit Court. Those suits were combined and styled as follows: Dana Flowers and William "Bill" Coad, et al. v. City of West Helena, Arkansas and Johnny Weaver, et al. (CV2005–30); Cross Claimant City of West Helena, Arkansas v. Cross Defendants Johnny Weaver, Renee Whitfield, Calvin Holden, Eddie Lee, Nathan Ashwood, Edward Joshaway, Edward Schieffler, James Parks, Earlon Majors, Melvin Jackson, Clarence Richardson, Bobby Jones, Jarvis Smith, Shirley Coad, Roy C. "Bill" Lewellen, Gary Austin, and Lewellen and Associates, et al. (CV2005–30); Counter Claimant City of West Helena v. Counter Defendants Dana Flowers and William Coad (CV2005–31).

from his position, they voted to compensate Collins for being fired.

The City objected to Holden's testimony regarding the council's vote to compensate Collins for damages, arguing that settlement negotiations were inadmissible under Rule 408 (2008) of the Arkansas Rules of Evidence. However, the trial court overruled the objection, opining that Rule 408 was not applicable, but noting the City's continuing objection. After Holden testified that the city council voted to pay Collins for his firing, over and above the amount of his back pay, the City again objected and argued further that, under the best evidence rule, there was no document showing the council's actions. Collins responded by agreeing that minutes from the city-council meetings would be the best evidence of their actions, but that those minutes were not available from the City. The trial court overruled the objection. However, the City continued its objection by claiming that

> these are not part of Mr. Wilson's [Collins's counsel] plea. This is a new cause of action that he's saying that they are related. I object to testimony other that [sic] is part of the pleading. If there was a payment, at some time in 2005, he has not amended his complaint and has not taken any action related to it.

Collins argued that the pleadings would conform to the proof, and the City objected. Collins argued that the city council's vote to compensate him was not a settlement negotiation, but an action taken up by the mayor and the city council. The trial court overruled the City's objection.

In order to refresh Holden's recollection, the City supplied him with a letter, which was from Collins's counsel to the mayor. The trial court then read the letter into the record:

> Dear Mayor Weaver, based upon the actions of the City Council and the non-veto of the Mayor, in regards to Collins versus the City of West Helena, I confirm the acceptance of Roosevelt Collins to the actions of the City Council in the settlement of this case. As a result of the offer of settlement by Roosevelt Collins on the 11th day of November, 2005, and the acceptance of the same by a vote of acceptance on December 28, 2005, by the City Council of West Helena, both parties have consummated the agreement for the resolution of this case. If this correspondence reflects the factuality of this situation, please sign below as approval of the same, on behalf of the City of West Helena and City Council. Approved by Mayor Johnny Weaver this 29th day of December, 2005.

The trial court noted that the signature appeared to be Weaver's and that the letter was approved by attorney Jimmy Wilson. Collins moved to admit the letter into evidence, and the City objected arguing that the meetings held by the city council were not valid or legal. However, the trial court ruled that statements of lawyers were not evidence, and allowed the letter to be introduced.

James F. Valley, current mayor of Helena–West Helena, testified that by operation of law, the City accepted both the responsibilities of the former Helena and West Helena. He testified that Collins voluntarily left his employment with the City. He said that Collins was paid between $35,000 and $36,000 in 2006, and $45,000 in 2005. He further testified to two installment payments made to Collins for back pay that amounted to about $5000.

Collins testified that he was present at a city-council meeting where the council voted to pay him $33,000 in damages, but

he did not receive that money. He said that the $33,000 did not have anything to do with the back pay owed him. He testified that the City owed him for the things that he went through as he was being terminated. He admitted that he was paid $45,000 in 2005, but claimed that he was treated unfairly and did not receive the pay raises each year commensurate with other department heads.

The City moved to dismiss, claiming that Collins had not met his burden of proof. The City argued that Collins actually received more than he was asking for in salary and that he left his job by his own choice. It further argued that Collins's claim for damages based upon stress was not supported by the evidence as he did not go to a psychiatrist or hospital. Collins argued that the City voted to pay him $33,000, and was now refusing to do so. He pointed out that the reason for his being paid $45,000 in 2005 was because he had been taken off of salary and demoted to hourly wages. The overtime work he accumulated accounted for the difference in his pay. The trial court denied the motion.

William Coad testified that he was an alderman in 2005 and was there when other aldermen voted to remove Collins from his position. He recalled Collins being placed back in his position and voting to increase his pay. Renee Whitfield testified that she was the city clerk in 2005 and official keeper of payroll records. She said that Collins was paid $420 per week and he received $3,710.04 on June 9, 2005, and $2500 on June 16, 2005. His total gross pay for 2005 was $45,641.89.

Sandra Ramsey, city clerk since January 2006, stated that the City passed an ordinance that consolidated their new municipal code, allowing the City to absorb the authorities of the two former cities. It also obligated it to pay off the debts of the former cities. Finally, James F. Valley was recalled and testified that he could not refute that the city council voted to pay Collins $33,000.

The trial court found that the City publicly approved payment or compensation to Collins in the amount of $33,000. The trial court held that the action of the City of West Helena was binding on the present City and that the new City assumed the obligation of the former City of West Helena through its consolidation process. The trial court denied Collins's claims for additional damages related to his discharge, including his request for mental anguish, psychological damages, and mental stress. Further, the trial court denied Collins's request for reinstatement. However, the trial court granted judgment to Collins in the amount of $33,000, along with reasonable attorney's fees. The trial court awarded fees to Collins, finding that he was entitled to them as the prevailing party in a contractual dispute and stating that the City did not object. The City filed a timely notice of appeal, and this appeal followed.

## II. Standard of Review

In appeals from a bench trial, we will not reverse the circuit court's findings of fact unless they are clearly erroneous. *Davenport v. Burnley*, 2010 Ark. App. 385, 2010 WL 1790780. The resolution of disputed facts and the determination of witness credibility are within the province of the fact-finder. *See id.*

## III. Writ of Mandamus or Declaratory Judgment

The City argues that in order to obtain a writ of mandamus, Collins must establish that he has no other remedy at law and that he has a specific right for the enforcement of which there is no other legal remedy. *Arkansas Democrat–Ga-*

zette v. Zimmerman, 341 Ark. 771, 20 S.W.3d 301 (2000). Further, the City points out that it is the legal right of the mayor as the chief executive officer of the municipal corporation to appoint and remove department heads of the City. Ark. Code Ann. § 14–42–110(a)(1). The City argues that Collins attempts to use the right of the mayor as his own right and that this statute does not create an entitlement of the employee to the department-head position. The City points to the evidence as outlined above, arguing that Collins left his work at the City by choice and that he earned $45,000 in 2005, which is more than he would have made had he remained as department head for the entire year.

Mandamus is an appropriate remedy when a public officer is called upon to do a plain and specific duty, which is required by law and which requires no exercise of discretion or official judgment. *Clowers v. Lassiter*, 363 Ark. 241, 213 S.W.3d 6 (2005). A writ of mandamus is a discretionary remedy that will be issued only when the petitioner has shown a clear and certain legal right to the relief sought and there is no other adequate remedy available. *Id.* The City argues that Collins did not produce any evidence that he had a specific legal right. Further, the City claims that Collins did not present any evidence that a writ of mandamus was his only remedy. It contends that, by virtue of Collins amending his complaint in the midst of trial, he admitted that he may have a remedy for damages. Therefore, the City argues that Collins did not and cannot prove he had a legal right to be the department head.

Collins argues that the testimony of Holden, Weaver, and Valley confirms that there was an offer and acceptance of an agreement that resolved all claims that he had with the City. Collins contends that mandamus is an appropriate remedy to demand a public official to do a plain and specified duty as required by law that requires no exercise of discretion. *See Clowers, supra.* Here, the present City government was obligated to pay the legitimate debts owed by the previous cities of Helena and West Helena after their consolidation. Collins claims that both Holden and Weaver confirmed the action of the city council as referenced in the December 29, 2005 letter, and the trial court's decision to enforce the council's decision is not clearly erroneous.

In its many findings, the trial court did not clearly state that it was relying on either mandamus or declaratory judgment law, but did state that "[t]his is basically a contractual dispute requiring the enforcement of the Court." While this action does not clearly fall within traditional mandamus actions or traditional contract enforcement, the trial court's findings are not clearly erroneous. A declaratory judgment best describes the trial court's ruling. Arkansas Code Annotated section 16–111–104 provides as follows:

> Any person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

The trial court found that the City was presented the issue of Collins's discharge and approved an offer of settlement of Collins's claims regarding his discharge in the amount of $33,000. Further, it found that Collins accepted the settlement, but that the City failed to tender payment. Based on these facts, the trial court grant-

ed Collins judgment in the amount of $33,000. We hold that the trial court's declaration of the parties' rights under this scenario is not clearly erroneous.

### IV. *Evidence of Settlement Negotiation*

■ The City contends that the trial court clearly erred by allowing testimony regarding the purported settlement negotiations and evidence of an alleged city-council meeting to vote to settle Collins's claim. Rule 408 of the Arkansas Rules of Evidence provides,

> Evidence of (1) furnishing, offering, or promising to furnish, or (2) accepting, offering, or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for, invalidity of, or amount of the claim or any other claim. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require exclusion if the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

■ The City points out that it continued throughout the proceedings to object to evidence of settlement negotiations. The trial court overruled each objection and allowed each witness to testify regarding the purported settlement. To invoke the rule restricting admission of evidence regarding offers of compromise: (1) there must be a claim; (2) the purpose of offering the evidence must be to prove liability for, invalidity of, or the amount of the claim; (3) valuable consideration must be furnished or offered to be furnished, or promised to be furnished, or valuable consideration must be accepted, offered, or promised to be accepted in an effort to compromise or attempt to compromise a claim; and (4) the claim must be disputed as to either validity or amount. *Wal–Mart Stores, Inc. v. Londagin*, 344 Ark. 26, 37 S.W.3d 620 (2001). The City contends that Rule 408 prohibits the introduction of such evidence when it is offered to prove liability for, invalidity of, or the amount of any claim. Therefore, the City claims that the trial court clearly erred in its application of Rule 408 and all evidence regarding the alleged settlement should have been excluded.

We agree with Collins that Rule 408 has no bearing in this matter. A vote of a legislative body to resolve a dispute, which is then approved by the signature of the chief executive of that body, is not a negotiation. It is a resolution of a debt. The testimony and evidence before the trial court was that the city council met and voted to pay Collins $33,000. The trial court's ruling in this regard is affirmed.

### V. *Settlement Contract*

■ The City contends that for Collins to prevail on a breach-of-contract claim, he must establish the five factors evidencing a contract, which are (1) competent parties; (2) subject matter; (3) legal consideration; (4) mutual agreement; and (5) mutual obligations. *Hunt v. McIlroy Bank & Trust*, 2 Ark.App. 87, 616 S.W.2d 759 (1981). The City argues that consideration is lacking in this scenario. It contends that there is nothing in the record to support the notion that Collins should be compensated for anything because he voluntarily left the City, he did not have any medical bills, he received more money as an hourly employee than he would have received as a salaried employee, and when he left the City he was being compensated the same amount for doing half the job that he had prior to the consolidation of the cities.

The City argues, therefore, that an award to Collins would be a gift, which is prohibited by article 12, section 5 of the Arkansas Constitution.[3]

The City further claims that the trial court did not engage in any factual determination regarding the validity of a contract when it ruled in favor of Collins. The City contends that, because of the Arkansas Freedom of Information Act,[4] the city council could not discuss settlement matters in private. It follows, therefore, that the fact that there was a public discussion does not mean that the substance of that discussion was not for settlement purposes.

Next, the City contends that the trial court awarded Collins the $33,000 because he amended his complaint to comport with the proof. The City argues that the only record of a city-council meeting was the testimony of Weaver, Collins, and Holden. The City claims, however, that if there had been a meeting and the minutes were not transcribed, there would be an official record in the City of the roll call and the vote of the meeting as is required for all meetings. The trial court specifically found that the former City of West Helena, by its city council, approved an offer of settlement of $33,000 for any and all claims of Collins for compensation regarding his discharge. The trial court denied Collins's request for reinstatement and additional damages. The City claims that the trial court's entire finding is based upon the purported contract. The City contends that even though Collins never amended his complaint to enforce an alleged settlement, the trial court compensated him and granted relief that was not requested.

Collins claims that whether he suffered a breach of contract or was otherwise wrongfully terminated by the authority of the city council is irrelevant. The trial court found that the City, through the city council and the mayor, agreed that there had been a violation of his rights and moved to remedy those injuries by vote. Collins contends that the issue of contract or wrongful termination is not germane to the determination of the trial court's findings. He argues that the City recognized the financial debt owed to Collins and approved payment.

As we noted above, the trial court characterized its ruling as based upon "basically a contractual dispute requiring the enforcement of the Court." The City's argument that consideration is lacking because nothing in the record supports that Collins should be compensated ignores the testimony of Calvin Holden, who explained that the city council voted to compensate Collins for being fired. Also, the City's argument that there were no findings made by the trial court regarding the validity of a contract, claiming that the mere fact that discussions were held in a public meeting does not mean that they were not for the purposes of settlement negotiations, assumes that the city council's actions were settlement negotiations. Because we have upheld the trial court's

---

3. Article 12, section 5 of the Arkansas Constitution provides that no county, city, town or other municipal corporation, shall become a stockholder in any company, association, or corporation; or obtain or appropriate money for, or loan its credit to, any corporation, association, institution or individual.

4. Arkansas Code Annotated section 25–19–106(a) (Supp.2009) provides that, except as otherwise specifically provided by law, all meetings, formal or informal, special or regular, of the governing bodies of all municipalities, counties, townships, and school districts and all boards, bureaus, commissions, or organizations of the State of Arkansas, except grand juries, supported wholly or in part by public funds or expending public funds, shall be public meetings.

ruling that the city council's actions were not settlement negotiations, the City's remaining arguments must fail. Accordingly, we affirm the trial court's order.

Affirmed.

KINARD, J., agrees.

PITTMAN, J., concurs.